UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROBERT TORTORA,

         Plaintiff,

   - against -

CITY OF NEW YORK,
POLICE DETECTIVE MALCOLM DANZIGER,
POLICE OFFICER TIMOTHY DONNELLY,
POLICE OFFICER JOHN/JANE DOE(S) #'S 1-3,

         Defendants.
------------------------------------------------------------------------X

**AMENDED COMPLAINT**

**15-CV-3717 (MKB) (VMS)**

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES**

Plaintiff, ROBERT TORTORA, by his attorneys, NASS & ROPER LAW, P.C., complaining of the Defendants, respectfully alleges, upon information and belief, as follows:

## I. PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff, ROBERT TORTORA, seeks damages to redress the deprivation, under color of state law, of rights secured to him under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution. On or about May 2, 2014, at approximately 10:00 a.m., at or near the 122nd police precinct located at 2320 Hylan Boulevard in Richmond County, City and State of New York, Plaintiff was falsely arrested and wrongfully imprisoned by Defendants including, but not limited to, CITY OF NEW YORK, POLICE DETECTIVE MALCOLM DANZIGER, POLICE OFFICER TIMOTHY DONNELLY and POLICE OFFICER JOHN DOE(S) #'S 1-3.  It is alleged that Defendants falsely arrested Plaintiff, detained him excessively prior to his arraignment, created false evidence and forwarded it on to prosecutors and maliciously prosecuted claims

against him knowing that Plaintiff was not guilty of the offenses charged in violation of his constitutional rights.

## II. JURISDICTION

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §1343 (3) and (4), which provides for original jurisdiction in this court of all suits brought pursuant to 42 U.S.C. §1983, and by 28 U.S.C. §1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the United States.  This Court has pendant jurisdiction over Plaintiff's state law claims.

## III. PARTIES

3. Plaintiff, ROBERT TORTORA, at all times relevant hereto resided in New York County, specifically 12 West 132nd Street, in the City and State of New York.

4. Defendant, CITY OF NEW YORK, (hereinafter "CITY") is a municipal corporation, incorporated pursuant to the laws of the State of New York, which operates the New York City Police Department (hereinafter "NYPD"), and as such is the public employer of the Defendant officers/detectives herein.

5. Defendant, POLICE DETECTIVE MALCOLM DANZIGER (SH: 02001) was an NYPD police detective, and at all relevant times hereto, acted in that capacity as an agent, servants and/or employee of Defendant CITY and within the scope of his employment.

6. Defendant, POLICE OFFICER TIMOTHY DONNELLY (SH: 01534) was an NYPD police officer, and at all relevant times hereto, acted in that capacity as an agent, servants and/or employee of Defendant CITY and within the scope of his employment.

7. Defendants, POLICE OFFICERS JANE/JOHN DOE(S) #'s 1-3 were NYPD police officers, and at all relevant times hereto, acted in that capacity as agents, servants, and/or employees of Defendant CITY and within the scope of their employment.

8. At all relevant times hereto, Defendants were acting under the color of state and local law. Defendants are sued in their individual and official capacities. At all relevant times hereto, Defendant CITY was responsible for making and enforcing the policies of NYPD and was acting under the color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York.

## IV. FACTS

9. Plaintiff Robert Tortora ("Tortora") has been friends with an individual by the name of Vincent Curulli for several years. Vincent Curulli is a retired New York Police Department ("NYPD") employee. Vincent Curulli is married to Tricia Curulli and they are currently involved in a bitter divorce and custody battle. Tricia Curulli is also a retired NYPD officer who has close ties with current and former members of the NYPD, specifically with respect to the 122nd precinct in Staten Island.

10. Between 2013 and 2016, Tricia Curulli made several complaints about her husband Vincent Curulli to NYPD employees who she is personally familiar with, including the within defendants, Danzinger and Donnelly. Upon information and belief, Ms. Curulli maintains a personal relationship with several members of the NYPD at the 122nd precinct including the within defendants. If Ms. Curulli calls to complain about anybody, her friends and colleagues at the 122nd precinct listen very attentively and usually act, even if the facts provided would not typically motivate the members of

the 122nd precinct to act. This is done out of respect and deference to their colleague and friend, Ms. Curulli.

11. Using that relationship, Ms. Curulli had her husband, Vicnent Curulli arrested four times between 2013 and July 2016. The most recent arrest of Vincent Curulli received media attention as Ms. Curulli alleged that her husband assaulted her on her neck in a public place. Vincent Curulli adamantly denied the allegations, however, he was arrested. All of the prior arrests, upon information and belief have resulted in either ACD's or dismissals. Vincent Curulli believes that his wife has made these allegations to retaliate against him for the bitter nature of the divorce they are litigating and due to the ongoing custody battle. Mr. Curulli believes that Ms. Curulli is able to exercise a great degree of influence over her colleauges at the 122nd precinct due to her prior position at that precinct.

12. In late April or early May 2014, Ms. Curulli and Mr. TORTORA's fiancé had an argument in public. Ms. Curulli is aware that Robert Tortora is friends with her husband. Ms. Curulli resents anyone who supports her husband due to the ongoing bitter nature of the divorce proceeding.

13. Due to the animosity created by the argument with TORTORA's fiancé, Ms. Curulli decided to seek a pretext to have TORTORA arrested. She did this to punish her husband, since TORTORA is friends with Vincent Curulli and also to punish TORTORA and his fiancé for supporting her husband. In furtherance of this desire, Curulli contacted members of the NYPD at the 122nd precinct, including the within defendants and fabricated a story that TORTORA came to her property and took certain items from the backyard without permission. Curulli did not claim to have

4

witnessed the incident, however, Curulli conspired with her babysitter, a Ms. Deluca, to have Ms. Deluca claim she saw TORTORA, through a window, take certain items from the backyard of the property. The babysitter, who had no idea who TOTORA, was influenced by Curulli to cooperate with her employer, Curulli and Curulli's colleagues at the 122nd precinct.

14. A call was made by Ms. Curulli to her colleagues at the 122nd precinct. Defendants Danzinger and Donnelley responded to the call by their friend and colleague, Ms. Curulli. Without adequately investigating the matter, the defendants simply followed the lead offered by Ms. Curulli, a former member of service and immediately sought to arrest TORTORA. Ms. Deluca was unable to identify TORTORA during a photo array or lineup because she had never seen TORTORA before, however, the defendants misrepresented the facts and swore that Ms. Deluca identified TORTORA in a lineup and/or photo array. Upon information and belief, she could not identify TOTORA at all.

15. Plaintiff Robert Tortora, meanwhile, was on a golf trip out of state during all of the above events. He travelled there with three friends, including a retired State Court Judge and another police officer friend. The men travelled out of state, stayed at a hotel and participated in the multiday golf trip together. When Mr. Tortora returned from the trip, the day before his arrest, the police were already looking for him. Mr. Tortora was told, on the day he returned to New York that the police had been to a social club he belongs to asking for him. Mr. Tortora immediately thought that the police must have been trying to reach him because of a complaint he had previously made to police regarding a burglary some months before. The next day, police came

5

to his home when he was not present and spoke to his neighbor. His neighbor called him and he spoke to the police and told them he would meet them soon. He drove home to meet the police. He was not arrested at that time but simply asked to drive with them to the precinct and he did so. At the precinct, Plaintiff met with defendant Danzinger and saw defendant Donnelly. He was placed in custody and completely shocked by the allegations of him stealing items from Ms. Curullis' home. He explained to the police that he had been out of state for the last several days with his friends, including the retired State Court Judge and police officer. The defendants, however, intentionally effectuated the arrest of plaintiff despite actual knowledge of the plaintiff's innocence.

16. Retired NYPD detective Richard Keane intervened in the matter, on the day of the arrest. Mr. Keane spoke to defendant Danzinger at the precinct. Mr. Keane reiterated that Mr. Tortora and himself had been together out of state during the alleged incident. Defendant Danzinger's response, quoted verbatim by Mr. Keane was "I know. It's higher than that." It is alleged that what defendant Danzinger meant was that he knew plaintiff was innocent of the crime, but he was essentially ordered to make this false arrest by supervisors as Ms. Curulli's influence at the precinct is widespread.

17. Defendant Danzinger signed the knowingly false and fabricated criminal complaint charging Plaintiff with robbery and other crimes to be signed and forwarded to prosecutors. Defendants had an opportunity to refuse to level knowingly false allegation against plaintiff, however, they declined to do so. Defendants knew with certainty that the charges leveled against plaintiff could never result in a conviction

because plaintiff was innocent and that he could prove he was out of state at the time of the within incident.

18. Plaintiff was then put in a cell and intentionally held by defendants for approximately three days before his arraignment in order to punish him. The officers, following the lead and influence of Ms. Curulli, demonstrated their own animosity towards Mr. Curilli and his friend, Robert Tortora. This animosity is documented in a facebook post which was previously provided to the Court which is annexed hereto. The exchange is, upon information and belief, between defendant Donnelly and Ms. Curulli. As can be seen there is open hostility towards Mr. Curulli and his friend, Robert Tortora including mention that Mr. Tortora "won't see the f..ing Judge for a couple of days" which is what in fact occurred here.

19. Plaintiff was forced to make approximately three (3) court appearances before all charges against him were dismissed. The charges were dismissed, upon belief, significantly after the District Attorney's office finally received video confirmation that plaintiff was out of state at the time of the alleged incident.

20. Plaintiff has sustained significant damages as a result of the foregoing, including loss of liberty, economic damages, psychological stress and damages, reputational damage and other injuries.

21. That heretofore and on the 28th day of October, 2014, Plaintiff's Notice of Claim and Intention to sue was duly served upon and filed with the CITY; said Notice was filed within ninety (90) days after the cause of action herein accrued and set forth the name and post office address of Plaintiff, the nature of the claim, the time when, the place

where, the manner in which the claim arose and the items of damage and injuries sustained.

## V. FIRST CAUSE OF ACTION
**Pursuant to §1983 (FALSE ARREST)**

22. Paragraphs 1 through 21 of this complaint are hereby re-alleged and incorporated by reference herein.

23. That Defendants had neither valid evidence for the arrest of Plaintiff nor legal cause or excuse to seize and detain him for approximately three days.

24. That in detaining Plaintiff for approximately three days, and without a fair and reliable determination of probable cause, Defendant CITY abused its power and authority as a policymaker of the New York City Police Department under the color of State and/or local law.

25. Upon information and belief, it was the policy and/or custom of Defendant CITY to inadequately supervise and train its officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees.

26. As a result of the above described policies and customs, the officers, staff, agents and employees of Defendant CITY believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

27. The above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of the CITY to the constitutional rights of arrestees and were the cause of the violations of Plaintiff's rights alleged herein.

8

28. By reason of Defendants acts and omissions, Defendant CITY, acting under color of state law and within the scope of its authority, in gross and wanton disregard of Plaintiff's rights, subjected Plaintiff to an unlawful detention, in violation of the Fourth and Fourteenth Amendments of the United States Constitution and the laws of the State of New York.

29. By reason of the foregoing, Plaintiff suffered mental injuries, deprivation of liberty and privacy, terror, humiliation, damage to reputation and other psychological injuries.  All of said injuries may be permanent.

### VI. SECOND CAUSE OF ACTION
### Pursuant to §1983 (MALICIOUS PROSECUTION)

30. Paragraphs 1 through 29 are hereby re-alleged and incorporated by reference herein.

31. That Defendants, with malicious intent, arrested Plaintiff and initiated a criminal proceeding despite the knowledge that Plaintiff had committed no crime.

32. That the criminal matter against Plaintiff was terminated in his favor and the court dismissed on September 18, 2014.

33. That there was no probable cause for the arrest and criminal proceeding.

34. That by reason of Defendants' acts and omissions, Defendants, acting under the color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff's rights, deprived Plaintiff of his liberty when they maliciously prosecuted him and subjected him to an unlawful, illegal and excessive detention, in violation of his rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

35. That upon information and belief, Defendants had a policy and /or custom of maliciously prosecuting individuals despite the lack of probable cause. Thus, as a result of the above described policies and customs, Plaintiff was maliciously prosecuted despite the fact that he had committed no violation of the law.

36. That upon information and belief it was the policy and /or custom of Defendant CITY to inadequately hire, train, supervise, discipline and /or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents, and employees.

37. That as a result of the above described policies and customs, Defendant CITY, its staff, agents and employees of Defendant CITY believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

38. That the above described policies and customs demonstrate a deliberate indifference on the part of the policymakers of Defendant CITY to the constitutional rights of arrestees and were the cause of the violations of Plaintiff's rights alleged herein.

39. That in so acting, Defendant CITY abused its power and authority as policymaker of the NYPD under the color of State and/or local law.

40. That by reason of the foregoing, Plaintiff suffered physical and psychological injuries, traumatic stress, post-traumatic stress disorder, mental anguish, economic damages including attorneys' fees, damage to reputation, shame, humiliation, and indignity. All of said injuries may be permanent.

## VII. THIRD CAUSE OF ACTION
### Pursuant to State Law (MALICIOUS PROSECUTION)

41. Paragraphs 1 through 40 are hereby re-alleged and incorporated by reference herein.

42. That Defendants acted with malicious intent, arrested Plaintiff and initiated a criminal proceeding despite the knowledge that Plaintiff had committed no crime.

43. That the criminal matter has been dismissed in Plaintiff's favor.

44. That there was no probable cause for the arrest and criminal proceeding.

45. Defendants knew that there was no likelihood of a conviction of Plaintiff and that he was innocent.

46. That by reason of Defendants acts and omissions, Defendants, acting under the color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff's rights, deprived Plaintiff of his liberty when they maliciously prosecuted him in violation of the Laws of the State of New York.

47. That by reason of the foregoing, Plaintiff suffered physical and psychological injuries, traumatic stress, post-traumatic stress disorder, mental anguish, economic damages including attorneys' fees, damage to reputation, shame, humiliation, and indignity.  All of said injuries may be permanent.

### VIII. FOURTH CAUSE OF ACTION
### Pursuant to §1983 (DENIAL OF RIGHT TO FAIR TRIAL)

48. Paragraphs 1 through 47 are hereby re-alleged and incorporated by reference herein.

49. By fabricating evidence, namely the criminal complaint, defendants violated Plaintiff's Constitutional right to a fair trial.

50. Defendants were aware of the falsity of the information used to prosecute Plaintiff, yet knowingly turned the fabricated evidence over to prosecutors.  Defendants withheld actual information from prosecutors that plaintiff was innocent of the crime.

11

51. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, economic damages, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to his reputation and standing within his community.

### IX. FIFTH CAUSE OF ACTION
### Pursuant to §1983 (EXCESSIVE PRE-ARRAIGNMENT DETENTION)

52. Paragraphs 1 through 51 are hereby re-alleged and incorporated by reference herein.

53. That Defendants had no legal cause nor excuse to detain Plaintiff for a prolonged period prior to arraignment.

54. That Defendants detained Plaintiff excessively prior to arraignment in violation of Plaintiff's civil rights.

55. That Defendants should have expeditiously investigated this matter and released Plaintiff.

56. By reason of Defendant's acts and omissions, Defendants, acting under color of state law and within the scope of its authority, in gross and wanton disregard of Plaintiff's rights, deprived Plaintiff of his liberty when it subjected him to an unlawful, illegal and excessive detention, in violation of his due process rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and the laws of the State of New York.

57. That Defendants, through its officers, agents and employees, unlawfully incarcerated Plaintiffs for an excessive period of time prior to arraignment.

58. By reason of the foregoing, Plaintiffs suffered mental injuries, economic injury, deprivation of property, liberty and privacy, terror, humiliation, damage to reputation and other psychological injuries. All of said injuries may be permanent.

## X. SIXTH CAUSE OF ACTION
### Pursuant to State Law (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

59. Paragraphs 1 through 58 are hereby re-alleged and incorporated by reference herein.

60. That as a result of the aforementioned incidents intentionally caused by Defendants, Plaintiff, ROBERT TORTORA, suffered severe emotional and/or mental distress.

61. That as a result of the aforementioned extreme and outrageous conduct intentionally inflicted by Defendants, Plaintiff suffered severe emotional and/or mental distress, including but not limited to emotional overlay, depression, stress, anxiety, humiliation, embarrassment and tension, serious permanent personal injuries of mind as well as special damages and loss and/or diminution in his enjoyment of life, all of which are permanent in nature.

## XI. SEVENTH CAUSE OF ACTION
### Pursuant to State Law (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

62. Paragraphs 1 through 61 are hereby re-alleged and incorporated by reference herein.

63. That as a result of the aforementioned incidents intentionally caused by Defendants, Plaintiff, ROBERT TORTORA, suffered severe emotional distress and physical injuries.

64. That as a result of the aforementioned extreme and outrageous conduct negligently inflicted by Defendants, Plaintiff suffered severe emotional and/or mental distress, including but not limited to emotional overlay, depression, stress, anxiety,

13

humiliation, embarrassment and tension, serious permanent personal injuries of mind as well as special damages and loss and/or diminution in his enjoyment of life, and physical injuries, all of which are permanent in nature.

## XII. EIGHTH CAUSE OF ACTION
### Pursuant to State Law (RESPONDEAT SUPERIOR)

65. Paragraphs 1 through 58 are hereby re-alleged and incorporated by reference herein.

66. That at all times, all Defendants were acting within the scope of their employment.

67. That Defendant CITY was able to exercise control over Defendant Officers' activities.

68. That Defendant CITY is liable for Defendant Officers' actions under the doctrine of *respondeat superior*.

69. By reason of the foregoing, Plaintiff suffered mental injuries, emotional injuries, economic injury, trauma, humiliation, terror, damage to reputation, and other psychological injuries. All of said injuries may be permanent.

## XIII. NINTH CAUSE OF ACTION
### Pursuant to State Law (PRE-ARRAIGNMENT DELAY)

70. Paragraphs 1 through 69 are hereby realleged and incorporated by reference herein.

71. Defendants negligently and/or intentionally failed to arraign Plaintiff promptly following his arrest as required by New York State and Federal laws, rules, regulations and statutes.

72. Said failure to promptly arraign Plaintiff caused his arrest to be void ab initio.

73. As a result of the above constitutionally impermissible conduct, plaintiff was caused to suffer personal injuries, violation of civil rights, economic damages, emotional

14

distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to his reputation and standing within his community.

### XIV.  TENTH CAUSE OF ACTION
### Pursuant to §1983 (FAILURE TO INTERVENE)

74. Paragraphs 1 through 73 are hereby realleged and incorporated by reference herein.

75. That Defendants failed to intervene when Defendants knew or should have known that Plaintiff's constitutional rights were being violated.

76. That Defendants had a realistic opportunity to intervene on behalf of Plaintiff, whose constitutional rights were being violated in their presence.

77. That a reasonable person in the Defendants' position would know that Plaintiff's constitutional rights were being violated.

78. That by reason of Defendants' acts and omissions, Defendants, acting under the color of state law and within the scope of their authority, in gross and wanton disregard of PLAINTIFF's rights, deprived PLAINTIFF of his liberty when they failed to intervene to protect him from Defendants' violation of PLAINTIFF's civil rights pursuant to Fourteenth Amendment of the United States Constitution.

79. That upon information and belief, Defendants had a policy and /or custom of failing to intervene to protect citizens from violations of civil rights by police officers. Thus, as a result of the above described policies and customs, PLAINTIFF was not protected from Defendants' unconstitutional actions.

80. That upon information and belief it was the policy and/or custom of defendant CITY to inadequately hire, train, supervise, discipline and/or terminate their officers, staff,

agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents, and employees.

81. That as a result of the above described policies and customs, defendant CITY, its staff, agents and employees of defendant CITY believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

82. That the above described policies and customs demonstrate a deliberate indifference on the part of the policymakers of defendant CITY to the constitutional rights of detainees and were the cause of the violations of PLAINTIFF's rights alleged herein.

83. That in so acting, defendant CITY abused its power and authority as policymaker of the NYPD under the color of State and/or local law.

84. That by reason of the foregoing, PLAINTIFF suffered physical and psychological injuries, traumatic stress, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation, and indignity. All of said injuries may be permanent.

**INJURY AND DAMAGES**

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer, emotional pain, suffering, inconvenience, injury to his reputation, loss of enjoyment of life, loss of liberty and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

WHEREFORE, Plaintiff respectfully requests that judgment be entered:

1. Awarding Plaintiff compensatory damages in a full and fair sum to be

    determined by a jury;

2. Awarding Plaintiff punitive damages in an amount to be determined by a jury;

3. Awarding Plaintiff interest from May 2, 2014; and

4. Awarding Plaintiff reasonable attorney's fees pursuant to 42 USC §1988; and

5. Granting such other and further relief as to this Court seems proper.

Dated: New York, NY
September 14, 2016

    Yours, etc.

    _____
    JUSTIN M. ROPER, ESQ.
    *ATTORNEY FOR PLAINTIFF*
    NASS & ROPER LAW, LLP
    14 PENN PLAZA, SUITE 2004
    NEW YORK, NEW YORK 10122

## **ATTORNEY'S VERIFICATION**

JUSTIN M. ROPER, ESQ., an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am an attorney and member of NASS & ROPER LAW, P.C., attorneys for Plaintiff, ROBERT TORTORA. I have read the annexed AMENDED COMPLAINT and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

The reason this verification is made by me and not Plaintiff is that Plaintiff is not presently in the county wherein the attorneys for the Plaintiff maintain their offices.

DATED:    New York, New York
          September 14, 2016

_____
JUSTIN M. ROPER, ESQ.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**ROBERT TORTORA,**

           **Plaintiff,**

 **– against –**

**CITY OF NEW YORK, ET AL.**

           **Defendants.**

**SECOND AMENDED COMPLAINT**

**NASS & ROPER LAW LLP**
*Attorneys for Plaintiff*
**ROBERT TORTORA**
**14 Penn Plaza, Suite 2004**
**New York, New York 10122**
**(718) 775-3246**
**Fax: (718) 775-3246**[*]

---

[*] Not for service of papers.